# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Dean J. Welk, | Civil No. 12-2864 (SRN/TNL) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Federal National Mortgage Association, Reiter & Schiller, P.A., and Curt Trisko, | |
| Defendants. | |

William B. Butler, Butler Liberty Law, LLC, 33 South Sixth St., Suite 4100, Minneapolis, Minnesota 55402, for Plaintiff Dean J. Welk.

Charles F. Webber and Elizabeth Ann Walker, Faegre Baker Daniels LLP, 90 South Seventh St., Suite 2200, Minneapolis, MN 55402, for Defendant Federal National Mortgage Association.

Curt N. Trisko and Rebecca F. Schiller, Schiller & Adam, PA, The Academy Professional Building, 25 Dale Street North, St. Paul, MN 55102, for Defendants Reiter & Schiller, P.A., and Curt Trisko.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Federal National Mortgage Association's Motion to Dismiss [Doc. No. 6]; Defendants Reiter & Schiller, P.A. and Curt Trisko's Motion to Dismiss [Doc. No. 13]; and Plaintiff's Motion to Remand [Doc. No. 16]. For the reasons stated below, the Court grants the Motions to Dismiss, denies the Motion to Remand, and dismisses the Amended Complaint [Doc. No. 25] with prejudice.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dean J. Welk challenges the foreclosure proceedings on his home for at least the third time in this Court.[1]  His first challenge was as part of a multi-plaintiff action, Cartier v. Wells Fargo Bank, N.A., Civ. No. 11-2168 (JRT/AJB).  In that lawsuit, Mr. Welk and his wife, Heather Welk, claimed to reside at "P.O. Box 9188, North St. Paul." (Cartier Compl. [Doc. No. 1-2] ¶ 23.)  The property, located in Ramsey County, Minnesota, was described in the Complaint as

> The South 160.7 feet of the Westerly 133.5 feet of the Easterly 261.22 feet of the South Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter of Section 14, Township 29, Range 22.

(Id.)

Less than two months later, Mrs. Welk was the first named plaintiff in another multi-plaintiff lawsuit, Welk v. GMAC Mortgage, LLC, Civ. No. 11-2676 (PJS/JJK) (Welk I).  In the Welk I Complaint, Mrs. Welk claimed to "own[] the property at 2130 Cowern Place East, North St. Paul."  (Welk I Compl. [Doc. No. 1-1] ¶ 1.)  The legal description of the property is

> East 127.72 feet of the South 1/2 of the Southeast 1/4 of the Southwest 1/4 of the Northeast 1/4 of Section 14, Township 29, Range 22 (except part acquired for right of way of St. Paul & Stillwater Road) also described as Block 38 of Fifth Addition to North St. Paul together with so much of streets and alleys as accrued to said Block 7 reason of vacation thereof, according to the United States Government Survey thereof and situate [sic] in Ramsey County, Minnesota.

---

[1] In addition, in three different lawsuits, Mr. Welk has challenged the foreclosures on properties that he owns but are not his residence.  Larsen v. Bank of Am., N.A., Civ. No. 11-1775 (MJD/JSM); Robinson v. Bank of Am., N.A., Civ. No. 11-2284 (MJD/LIB); and Brinkman v. Bank of Am., N.A., Civ. No. 11-3240 (JRT/TNL).

(Id.) At first glance, this appears to be a different property than that described in Cartier, but subtracting the Cartier property's 133.5 westerly feet from the 261.22 easterly portion of that property results in the "East 127.72 feet" described in Welk I. There is no explanation for Welk I's failure to name Dean Welk as a plaintiff, given that he presumably owns the property in joint tenancy with his wife.

Finally, in the first paragraph of the instant Amended Complaint, Plaintiff Dean Welk claims to "reside[] at 2121 Holloway Avenue East, North Saint Paul." (Welk II Am. Compl. [Doc. No. 25] ¶ 1.) The legal description of the property that follows is identical to the legal description of the Welks' property in Cartier. The difference in address between Welk II and the property in Welk I might give one pause, until one reads the second paragraph of the Welk II Amended Complaint, which states, curiously, that Dean Welk "is a natural person currently residing at 2120 E Cowern Place, North St. Paul." (Id. ¶ 2.)[2] There is no explanation for Mr. Welk's residence at two different addresses, nor is there any mention of Mrs. Welk. Both Cartier and Welk I were dismissed at the pleading stage for failure to state a claim on which relief could be granted.

In this matter, Mr. Welk's first claim challenges the assignment of his mortgage from the Mortgage Electronic Registration System ("MERS") to Wells Fargo, contending that the person who signed the assignment did not have the authority to do so, rendering the foreclosure invalid under Minnesota law. (Am. Compl. ¶¶ 12-15.) Similarly, Mr.

---

[2] Even more curiously, the Amended Complaint later contends that the "Subject Property is vacant." (Am. Compl. ¶ 39.)

Welk also contends that the individual who signed a power of attorney allowing Defendant Reiter & Schiller, P.A. to commence non-judicial foreclosure proceedings did not have the legal authority to do so. (Id. ¶¶ 23-24.) Mr. Welk also alleges that Defendant Federal National Mortgage Association (known colloquially as Fannie Mae) acquired an interest in the mortgage from Wells Fargo in February 2004 but no assignment of the mortgage from Wells Fargo to Fannie Mae was ever recorded. (Id. ¶¶ 20-21.) Because the purported assignment was never recorded, Mr. Welk contends that the foreclosure and subsequent sheriff's sale of the property is void. (Id. ¶ 27.)

The Amended Complaint does not allege when the foreclosure and sheriff's sale of Mr. Welk's property occurred, but Mr. Welk's memorandum states that a sheriff's sale was accomplished on August 24, 2010, and that Wells Fargo was the successful bidder on the property. (Pl.'s Opp'n Mem. [Doc. No. 14] at 4.) The Amended Complaint contends that Wells Fargo executed a quitclaim deed to the property in favor of Fannie Mae on March 11, 2011. (Am. Compl. ¶ 28.) This deed was recorded three days later, on March 14, 2011. (Id.)

The Amended Complaint raises six causes of action, although there are only five numbered Counts because there are two Count 3s. Count 1 seeks a "Determination of Adverse Interests" under Minnesota's quiet title statute, Minn. Stat. § 559.01. (Id. ¶ 38-41.) Count 2 asks for a declaratory judgment that the sheriff's sale and quitclaim deed are void, whether "Plaintiffs [sic] owe any obligation to Defendant Fannie Mae," that the assignment from MERS to Wells Fargo is void, and that Mr. Welk "remains the owner of

4

the property in fee title." (Id. ¶ 44.) The first Count 3 claims "Penalties for Deceit or Collusion" under Minn. Stat. § 481.07; the second Count 3 claims slander of title under Minn. Stat. § 504B.231. Count 4 claims negligence per se and Count 5 claims wrongful ouster and treble damages under Minn. Stat. § 504B.231. The claims for slander of title and negligence per se appear to be against the law firm and Defendant Trisko only; the claim for deceit or collusion is apparently brought against Fannie Mae, the law firm, and Trisko, and the remaining claims are against Fannie Mae alone.

All Defendants have brought motions to dismiss, and Mr. Welk has moved to remand. Although in the usual case, the Court would take up the motion to remand first, in this instance, the Court will first examine the merits of Mr. Welk's claims. Consideration of the nondiverse Defendants' argument that they were fraudulently joined "requires consideration of the merits of the claims made against the nondiverse defendant[s]." Welk I, 850 F. Supp. 2d. at 983.

## II. DISCUSSION

### A. Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs draw from the facts pled. Westcott v. City of Omaha, 901 F.2d

1486, 1488 (8th Cir. 1990).

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**B. The Claims**

    **1. Failure to State a Claim**

Mr. Welk's claims depend on several assumptions. First is the assumption that Fannie Mae acquired an interest in his property sometime before Wells Fargo purported to convey the property via quitclaim deed to Fannie Mae in 2011. According to the Amended Complaint, an assignment to Fannie Mae must have occurred because Fannie

6

Mae allegedly was an "investor" in the loan from the outset, and when the mortgage was assigned to Wells Fargo for servicing, Fannie Mae's contract with its servicers required that an assignment of the mortgage to Fannie Mae be prepared but not recorded.

On the surface, this theory seems to be possibly true. Fannie Mae's own "Seller/Servicer Guide" requires an assignment to Fannie Mae when a mortgage is transferred out of the MERS system, which would have occurred when Wells Fargo became the servicer for the mortgage. But even the slightest scrutiny of this theory shows it to be not only not likely, but completely implausible. First, there is no evidence whatsoever of any assignment, recorded or not, from Wells Fargo to Fannie Mae before 2011. As Fannie Mae points out, such an assignment would be illogical, because, if Wells Fargo had assigned Mr. Welk's mortgage to Fannie Mae before 2011, there would be no reason for Wells Fargo to deed the property to Fannie Mae in 2011. Moreover, the "Guide" about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Mr. Welk and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the "Guide," such a failure would be for Fannie Mae, not Mr. Welk, to prosecute. Finally, the "evidence" of Fannie Mae's purported investor status in the loan is a screen shot of the MERS loan information page for Mr. Welk's mortgage dated October 9, 2012. (Am. Compl. Ex. 3 [Doc. No. 25-3].) It is no surprise that Fannie Mae is listed as having an interest in October 2012—Fannie Mae acquired an interest from Wells Fargo in March 2011. There is no plausible allegation that Fannie Mae acquired any interest before 2011.

Nor do the allegations regarding the alleged lack of authority to sign hold up to even the slightest scrutiny. Mr. Welk insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind – no evidence pled supporting these allegations.

If the dictates of Twombly and Iqbal mean anything, they mean that bald and speculative allegations, standing alone, are not sufficient to withstand a challenge under Rule 12(b)(6). The Amended Complaint here contains a series of such blanket statements, unsupported by actual facts, claiming that Fannie Mae and the other Defendants nefariously colluded to deprive Mr. Welk of his home. Notably absent from the Amended Complaint is the fact that Mr. Welk failed to pay his mortgage payments as he promised to do, and no acknowledgment that the true reason Mr. Welk lost his home is that he failed to hold up his end of the mortgage bargain. Absent some plausible allegations, Mr. Welk's claims against all Defendants fail on their face.

### 2. Preclusion

Claim preclusion, or res judicata, means that a

> judgment, once rendered, [is] the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." . . . [W]hen judgment is rendered for a defendant, the plaintiff's claim is extinguished . . . [and] the effect of a judgment extends to the litigation of all issues relevant to the same claim . . . .

Kaspar Wire Works, Inc. v. Leco Engr'g & Mach., Inc., 575 F.2d 530, 535 (5th Cir.

8

1978). Similarly, issue preclusion, or collateral estoppel, "bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." Id.

"Litigants and lawyers alike are often too eager to put aside the first disposition of their disputes so as to pursue again their own notions of absolute truth and justice." 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4401 (2d ed. 2002). Every new legal theory does not take a lawsuit out of the dictates of claim and issue preclusion. Mr. Welk's claims here fail for the simple reason that he is estopped from challenging, for the third time in this Court, the foreclosure on his home.

Mr. Welk seeks to avoid the obvious application of claim and issue preclusion to his newest lawsuit by claiming, first, that because Fannie Mae was not a party to the first lawsuits, preclusion does not apply. But preclusion applies to those who were parties or in privity with parties to a previous lawsuit, and as in this Court's recent Butler decision, there can be no question that Fannie Mae, having succeeded to Wells Fargo's interest in Mr. Welk's property, is in privity with Wells Fargo, which was a party to the earlier cases. May 15, 2013, Order, Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL). More fundamentally, the party that is precluded here is Mr. Welk, who was a party to the Cartier litigation and either should have been a party or was clearly in privity with a party in the Welk I litigation. Thus, preclusion is applicable here.

Mr. Welk also argues that preclusion principles do not apply because the issue here could not have been and was not decided in the previous lawsuits. Specifically, he contends that the issue here is whether the purported early assignment of the mortgage to

9

Fannie Mae rendered the foreclosure invalid under Minnesota law. But Mr. Welk views the issue in the prior lawsuits and in this lawsuit too narrowly. The issue in the prior lawsuits was whether Wells Fargo properly foreclosed on Mr. Welk's mortgage. Mr. Welk's challenge here presents the same issue, because if the alleged assignment to Fannie Mae occurred but was not recorded, then Wells Fargo could not properly foreclose on Mr. Welk's mortgage. And even if Fannie Mae's involvement in the mortgage was unknown at the time the previous lawsuits were filed, in Cartier, the plaintiffs filed an amended complaint in September 2011, six months after the quitclaim deed to Fannie Mae was recorded. (Cartier, Civ. No. 11-2168 [Doc. No. 23] (Amended Complaint filed Sept. 23, 2011).) The Welk I plaintiffs also filed an amended complaint, this one in October 2011, seven months after the public records reflected Fannie Mae's interest in the mortgage. (Welk I, Civ. No. 11-2676 [Doc. No. 20] (Amended Complaint filed Oct. 14, 2011).) Mr. Welk's counsel should have discovered Fannie Mae's involvement before amending the Cartier and Welk I complaints and should have included any claims that could have been raised against Fannie Mae in those amended pleadings. His failure to do so means that he is precluded from raising those claims here.

### 3. Remand

Plaintiff appears to join Minnesota-resident- Defendants Reiter & Schiller and Trisko in an effort to avoid the removal of his lawsuit to federal court. However, "there exists no reasonable basis in fact and law supporting a claim against [these] defendants." Mentz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006) (quotation omitted). Indeed, Mr. Welk's claims against the law firm and lawyer are even more

unreasonable and attenuated than his claims against Fannie Mae. At least Fannie Mae (or its predecessor-in-interest, Wells Fargo) pursued a foreclosure against Mr. Welk's home. The law firm and lawyer were merely carrying out their jobs as lawyers for the entities involved, for which the law provides clear protection from liability. Murphy v. Aurora Loan Servs., LLC, 699 F. 3d 1027, 1031 (8th Cir. 2012) (citing McDonald v. Stewart, 182 N.W. 2d 437, 440 (Minn. 1970)). Mr. Welk attempts to allege that liability may lie because the attorneys knowingly engaged in fraud by enforcing documents signed by those without authorization to do so, but as noted above, Mr. Welk's bald speculation about the lack of signing authority is not plausible in the least. Moreover, the negligence per se claim brought against the law firm and Trisko is not an intentional tort and therefore cannot circumvent the prohibition on attorney liability. Id.

Because all of the claims against all Defendants fail as a matter of law, Defendants' Motions to Dismiss must be granted and Mr. Welk's Motion to Remand denied as moot.

**C.    Conclusion**

The allegations in this case do not state a claim on which relief may be granted. The Amended Complaint will be dismissed with prejudice.

**III.   ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Federal National Mortgage Association's Motion to Dismiss

[Doc. No. 6] is **GRANTED**;

2. Defendants Reiter & Schiller, P.A. and Curt Trisko's Motion to Dismiss [Doc. No. 13] is **GRANTED**;

3. Plaintiff's Motion to Remand [Doc. No. 16] is **DENIED**; and

4. The Amended Complaint [Doc. No. 25] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 17, 2013                    s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge